W. Brent Powell, Judge M.T.S-V. (“Mother”) and L.W.V. (“Stepfather”) filed a petition for the adoption of S.S.S. (“Child”) and termination of the parental rights of C.V.S. (“Father”). The circuit court concluded Father’s consent to the adoption was not required pursuant to § 453.040(7), RSMo 2000 [1] because Father willfully abandoned Child and willfully, substantially, and continuously neglected to provide Child with necessary care and protection. The circuit court terminated Father’s parental rights and granted the adoption. Father appeals from the circuit' court’s judgment, arguing its conclusions regarding abandonment and neglect are against the weight .of the evidence. The circuit court’s judgment is affirmed. I. Factual and Procedural History In 2007, Mother and Father began a romantic relationship.- In 2009, Mother gave birth to- a daughter, Child, in -the state of California. Father’s name appears on the birth certificate. Mother and Child lived with Father in California for approximately eight months following Child’s' birth.. Mother and-Father never married. In 2010, Mother and Father’s relationship ended, and Mother and Child moved5 to St. Louis, Missouri. Father made trips from California to St. Louis to visit Child. Mother also returned to California with Child on at least three occasions to allow Paternal Grandmother to see Child. During these visits, Father would occasionally be present. In 2013, Mother married Stepfather. Following the marriage, Father increased the frequency of his visits to St. Louis and his telephone calls, to Child. Father called Child at least threé times a week. Mother always supervised Father’s visits with Child in St. Louis. On December 23, 2014, Mother and Stepfather filed a petition for adoption of Child and termination of Father’s parental rights. The petition alleged Father willfully abandoned and neglected Child in the six months immediately prior to the filing of the petition. Father contested the termination and adoption. In 2015, the case proceeded to trial. Mother testified Father does not have a close, personal relationship with Child. She explained Child does not talk about Father between calls and visits, Child struggles to interact with Father during visits, and there were occasions when Father was late or failed to show, up for scheduled visits with Child. Mother also testified Father does not make Child’s interests a priority during visits, does not interact appropriately with- Child, encourages Child to break rules, shows no concerns for social norms, and talks at “cross purposes” with Child. Mother further- testified she does not trust Father to keep Child safe as he has shown a -lack of concern for Child’s health and safety, e,g., by placing Child in a vehicle without the appropriate seat belt or child seat. In addition, the appointed guardian ad litem reported Child does not- consider herself to be close to Father, does not request visits with Father, feels Father ignores her much of the time during visits,' and Father was unable to tell the'guardian ad litem much about Child-The guardian ad litem also reported Father was 20 minutes late to an arranged one-hour visitation with Child, there was no eye contact between Child and Father during the visit, and Child never looked at Father’s face during the visit. ! Mother also testified Father provided no financial support for Child. Mother explained, in the six months prior to filing the petition, she received monthly electronic transfers in the amount of $400 from Paternal Grandmother. She further explained it was Paternal Grandmother’s idea to send the money, it was always Paternal Grandmother who talked to her about sending the money, and Paternal Grandmother provided financial support to maintain a relationship with Child. Mother also testified Father occasionally provided birthday gifts for Child and one Christmas gift. Father testified although the $400 was electronically transferred by Paternal Grandmother, the money came from his trust.fund.-Father testified he has approximately $33,000 in a trust fund he received as an inheritance and he would take out $400 each month and give it to' Paternal Grandmother to send to Mother. Father explained Paternal Grandmother transferred the money because he was unfamiliar with the online banking system. Father further testified he and Child have fun together and she tells him she loves him in person and over the telephone. He admitted he was late to a scheduled visit with Child but claimed he had not missed a planned visit in the six months prior to Mother and Stepfather filing the petition. Father also testified he would like to have a better relationship with Child, but Mother’s supervision and control were interfering. In February, 2016, the circuit court entered its judgment terminating Father’s parental rights and ordering Child to be considered Mother and Stepfather’s child “for all legal intents and purposes.” The circuit court concluded Father willfully abandoned Child for purposes of § 453.040(7) because, despite having occasional contact with Child, he does hot have meaningful interactions with her. The circuit court further concluded Father willfully, substantially, and continuously neglected to provide Child .with necessary care and protection for purposes of § 453.040(7) because the evidence established that Paternal Grandmother, not Father, was the source of the $400 monthly payments. In reaching its conclusions, the circuit court found Mother’s testimony credible but concluded Father was not a credible witness. Father appealed, and after an opinion by the court of appeals, this Court transferred the case pursuant to article V, § 10 of the Missouri Constitution. II. Standard of Review This Court reviews whether there was clear', cogent, and' convincing evidence to support a statutory ground for terminating parental rights or to support a finding that a parent’s consent is not necessary for adoption pursuant to § 453.040 under the standard of review set forth in Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976): [T]he trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is ‘against the weight of the evidence’ with caution and with a firm belief that the decree or judgment is wrong. See also In the Interest of J.P.B., 509 S.W.3d 84, 90 (Mo. banc 2017); In re Adoption of C.M.B.R., 332 S.W.3d 793, 815 (Mo. banc 2011). On appeal, Father contends the circuit court’s conclusions regarding abandonment and neglect for purposes of § 453.040(7)[2] are against the weight of the evidence. “Appellate courts act with caution in exercising the power to set aside a decree or judgment on the ground -that it is against the weight of the evidence.” Me v. Smith, 439 S.W.3d 189, 205 (Mo. banc 2014). “[A] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment.” Id, (internal quotations omitted). “The against-the-weight-of-the-evidence standard serves only as a check on a circuit court’s potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong.” Id. at 206. “When reviewing the record in an against-the-weight-of-the-evidence challenge, this Court defers to the circuit court’s findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations.” Id. “A circuit court’s judgment is against the weight of the evidence only if the circuit court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment.” Id. “When the evidence poses two reasonable but different inferences, this Court is obligated to defer to the trial court’s assessment of the evidence.” J.A.R. v. D.G.R., 426 S.W.3d 624, 626 (Mo. banc 2014). “This Court rarely has reversed a trial judgment as against the weight of the evidence....” Pearson v. Roster, 367 S.W.3d 36, 52 (Mo. banc 2012).[3] III. Abandonment Father first argues the circuit court’s conclusion he abandoned Child is against the weight of the evidence. Abandonment means “a voluntary and intentional relinquishment of the custody of the child to another with the intent to never again claim the rights of parent or perform the duties of a parent.” C.M.B.R., 332 S.W.3d at 816 (internal quotations omitted). “Abandonment is largely a matter of intent.” Id. “Parents are not allowed to maintain only a superficial or tenuous relationship with their children in order to avoid a determination of abandonment.” In re J.M.J., 404 S.W.3d 423, 433 (Mo. App. 2013) (internal quotations omitted). Here, the circuit court concluded Father abandoned Child because his relationship with Child was merely superficial or tenuous. Father, as well as the dissent, rely on the fact that Father has had frequent contacts and visits with Child. This focus on the frequency of contacts and visits with Child, however, does not account for the quality of contacts and visits. The question of abandonment “requires an examination of the parent’s intent, an inferred fact, determined by considering all the evidence of the parent’s conduct.” In re Adoption of W.B.L., 681 S.W.2d 452, 455 (Mo. banc 1984) (emphasis added). A full consideration of the parent’s conduct means intent may be evidenced by not only the frequency of contacts and visits a parent has with a child but also the quality of the contacts and visits. Otherwise, frequent token contact without any substance — in other words, “superficial” contact — would suffice to stave off a determination of abandonment. The circuit court’s judgment included findings based on the evidence that: (1) “Despite having ample opportunities for visitation and communication with [Child], the evidence adduced at -trial and the GAL Report demonstrate a long term lack of interest in [Child] by [Father];” (2) “Despite having occasional contact with [Child], [Father] does not have meaningful interactions with [Child] and often arrives late or completely fails to appear for scheduled visits;” (3) Child “does not appear to have emotional ties to [Father], as observed by the Guardian Ad Litem and corroborated by the testimony of other witnesses who have observed [Father’s] interactions with [Child];” (4) Father “has continuously demonstrated a lack of commitment to [Child], by neglecting [Child’s] health and safety when she was in his care, showing' veiy little interest in [Child], missing scheduled visits without justifiable excuses, arriving 20 minutes late without explanation and missing a third of his Guardian Ad Litem observed visits with [Child] ... and lacking the emotional maturity to display parental commitment;” (5) Father “does not make [Child] a priority when he spends time with her, in that he does not want to go places that [Child] enjoys (such as parks or playgrounds) because he does not get her full attention, and he prefers to take her to places that are important to him without regard to [Child’s] needs and interests;” (6) Father “is more concerned about his perceived importance to [Child] than he is about [Child] herself;” (7) Father “much of the time ... ignores [Child] during visits;” and (8) Father “has failed to pay for the cost of care and maintenance of [Child] despite being financially able to do so.” Considering these findings, there is clear, cogent, and convincing evidence to support the circuit court’s conclusion that Father’s consent to adoption was not required due to abandonment.' The circuit court could have reasonably found, despite frequent contacts and visits, Father’s relationship with Child was merely superficial or tenuous. While it may also be reasonable to find Father’s relationship with Child was not merely superficial or tenuous, this Court must defer to the circuit court’s assessment of the evidence and its findings when the evidence poses two reasonable but different inferences. See J.A.R., 426 S.W.3d at 626. Thus, the circuit court’s conclusion that Father willfully abandoned Child based on a finding that his relationship with Child was merely superficial or tenuous cannot be said to be against the weight of the evidence. See Ivie, 439 S.W.3d at 206. IV. Neglect Father also argues the circuit court’s conclusion that he neglected Child is against the weight of the evidénce because he provided financial support to Child. Although this Court may affirm the circuit court’s judgment on the ground of abandonment alone,[4] the circuit court’s conclusion 'regarding neglect is also not against the weight of the evidence. Parents have a continuing obligation to provide financial support to a minor child. In re Adoption of C.M., 414 S.W.3d 622, 656 (Mo. App. 2013); see also S.M.H v. T.H., 160 S.W.3d 355, 367 (Mo. banc 2005). Father contends he financially supported Child by making the $400 monthly payments through Paternal Grandmother. Father testified he earns money as a music producer and the money for the $400 support payments came from his trust fund, which contains approximately $33,000. But the circuit court specifically found Father failed to offer any credible evidence he paid the money to Paternal Grandmother that was subsequently paid to Mother. Rather, the circuit court concluded Paternal Grandmother was the source of all funds paid to Mother. The bank records support the circuit court’s findings in that they show all funds transferred to Mother in the six months prior to the filing of the adoption petition were in Paternal Grandmother’s name. Mother testified she spoke exclusively to Paternal Grandmother about the payments and Paternal Grandmother made the payments to maintain a relationship with Child. The record, therefore, supports the circuit court’s finding that Father failed to provide financial support to Child despite having the ability to do so and refutes the only argument Father advanced in challenging the circuit court’s conclusion of neglect. Although not argued by. Father on appeal, the dissent again relies on the frequency of Father’s contacts. and visits with Child to reject the circuit court’s conclusion that Father neglected Child. While this Court has never expressly held that neglect requires a willful failure to provide financial support combined with other evidence of lack of contact with the child, the court of appeals suggested such. See, e.g., 404 S.W.3d at 432 (“‘Neglect’ is ultimately a question of an intent to forego ‘parental duties,’ which includes both an obligation to provide financial support for a minor child, as well as an obligation to maintain meaningful contact with the child.”). Even assuming, without deciding, that a conclusion of neglect cannot be based solely on a willful failure to provide financial support, there is clear, cogent, and convincing evidence to support the circuit court’s finding that Father’s relationship with Child was superficial or tenuous, i.e., that he did not “maintain meaningful contact” with Child.” See id. (emphasis added). Section 453.040(7) specifically refers to neglect as failing to provide a child with “necessary care and protection.” A parent may have frequent contact with a. child yet still neglect to provide, the child with necessary care and protection. Providing “care and protection” requires providing for the health, welfare, maintenance*, and protection of a child, but it also - suggests having a concern, interest,, and attachment to the child. See Webster’s Third New International Dictionary Unabridged 338 (2002). The dissent’s focus on the frequency of Father’s contacts and' visits with Child fails to account for the circuit court’s findings supporting its conclusion that Father neglected to care for and protect Child. Considering the same findings discussed above — e.g., Child’s lack of emotional ties to Father, Father’s lack of long-term interest and commitment to Child’s interests and needs, Father’s neglect of Child’s health and safety, and Father’s complete lack of financial support — there is clear, cogent, and convincing evidence to support the circuit court’s conclusion that Father’s consent to adoption was not required due to neglect. The circuit court could have reasonably found, despite frequent contacts and visits, Father has not only failed to provide financial support to Child despite having the ability to do so but also had only superficial rather than meaningful contact with Child. Again, while it may also be reasonable to find Father’s contacts were not superficial, this Court must defer to the circuit court’s assessment of the evidence and its findings when the evidence poses two reasonable but different inferences. See J.A.R., 426 S.W.3d at 626. Moreover, it. is noteworthy the circuit court found Father provided no financial support for Child for the six months preceding the filing of the petition for adoption despite having the ability and resources to do so. Such willful neglect speaks louder than his words or his. superficial or tenuous contacts with Child. The circuit court’s conclusion that Father willfully, substantially, and continuously neglected to provide Child with necessary care and protection is not against the weight of the evidence.[5] See Ivie, 439 S.W.3d at 206. Y. Conclusion The circuit court’s judgment is affirmed. Fischer, C.J., Wilson and Russell, JJ., concur; Breckenridge, J., dissents in separate opinion filed; Draper and Stith, JJ., concur in opinion of Breckenridge, J. . References to statutes are- to RSMo 2000 unless otherwise noted. . Section 453.040(7) provides that consent .to a child's adoption is not required of: A parent who has for a period of at least six months, for a child one year of age or older, or at least sixty days, for a child under one year of age, immediately prior to the filing of the petition for adoption, willfully abandoned the child or, for a period of at least six months immediately prior to the filing of the petition for adoption, willfully, substantially and continuously neglected to provide him with necessary care and protection[.] . As this Court stated in Ivie: “Prior statements from this and other Courts to the effect that greater deference is paid to the trial court in certain types of cases (e.g., family law) than in others are incorrect and misleading.” 439 S.W.3d at 199 n.9. To the extent such cases hold greater deference must be given to the trial court’s determinations, they should no longer be followed. See C.M.B.R., 332 S.W.3d at 815 (“Greater deference is granted to a trial court’s determinations in custody and adoption proceedings than in other cases.”); see also, e.g., In re Adoption of E.N.C., 458 S.W.3d 387, 394 (Mo. App. 2014); T.P.J. v. T.L., 432 S.W.2d 192, 200 (Mo. App. 2014); D.J.G v. A.B., 426 S.W.3d 700, 710 (Mo. App. 2014); In re Adoption I.R.C., 419 S.W.3d 857, 860 (Mo. App. 2013); J.M.J. v. D.J., 404 S.W.3d 423, 429 (Mo. App. 2013); In re H.N.S., 342 S.W.3d 344, 347 (Mo. App. 2011); Courtney v. Roggy, 302 S.W.3d 141, 150 (Mo. App. 2009); S.L.N. v. D.L.N., 167 S.W.3d 736, 741 (Mo. App. 2005). . A finding of either abandonment or neglect suffices for purposes of not requiring parental consent to an adoption. See § 453.040(7); see also 404 S.W.3d at 432. . That the circuit court could have reasonably concluded Father abandoned and neglected Child based on the evidence is true even though "[t]he clear, cogent, and convincing standard of proof applies in chapter 453 termination cases and adoption.” C.M.B.R., 332 S.W.3d at 819. "The clear, cogent and convincing standard of proof is met when the evidence ‘instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition and the fact finder’s mind is left with an abiding conviction that the evidence is true.’” W.B.L., 681 S.W.2d at 454. "Accordingly, this standard of proof may be met although the court has contrary evidence before it.” Id. “Likewise, evidence in the record which might have supported a different conclusion does not necessarily demonstrate that the trial court’s determination is against the weight of the evidence." Id.